vage, which it is unnecessary to quote. In the opinion of Judge Marvin, given in The Calcutta [Case No. 2,298], 1854, he cites several cases decided in this court, of this character, namely: The Herman [Id. 6,406], 1840, in which $800, The Augusta [Id. 646], 1839, in which $900, and The Mount Washington [Id. 9,887], in which $1,500, were given, and, after citing such cases, lays down what may be considered a rule for determining amounts to be given in such cases. He says: "The cases cited show that pilot services rendered by the wreckers under extraordinary circumstances have heretofore been rewarded in this court with a considerable degree of liberality. It is both just and politic that they should be so rewarded. In determining the amount of such compensation it is proper, as in a salvage cause, to take into consideration all the circumstances of the case, the situation of the vessel, the difficulties of the channel, and the value of the property, and to increase or diminish the amount accordingly. If the circumstances under which the pilot services were rendered should be very extraordinary, and the value of the property great, the court may, in my judgment, decree a compensation equal to what would probably be the share of the pilot vessel in connection with other vessels in the salvage in case the ship were lost, i. e. to give to the pilot vessel and crew what would be a fair salvage for them alone, and what vessels and crews of her size and numbers ordinarily draw in saving equal amounts of property." In that case, on a value of $60,000, there was a compensation of $1,500 given. I do not consider the circumstances in this case so materially differing from that as to require a departure from the general rule there laid down. The value of the property is large, and the amount to be awarded will be on such a small proportion thereto that it is unnecessary to obtain an accurate valuation. It will be near enough, for practical purposes, to assume it to be worth anywhere from one hundred and twenty-five to one hundred and seventy-five thousand dollars. This value will permit what I consider a very liberal compensation, without being a burdensome charge. I think $2,500 a liberal reward to the libellants, but which is fully justified by the circumstances. The decree will follow accordingly.

Vide The Angeline [Case No. 385], 1854.

## Case No. 3,496.
CURRY v. LOVELL.
[1 Cranch, C. C. 80.][1]
Circuit Court, District of Columbia. March Term, 1802.

EXECUTION—SUBSEQUENT JUDGMENT.

It is no bar to execution upon a supersedeas in Washington county, that the plaintiff has re-

covered another judgment in Alexandria county upon the same cause of action, if it be not satisfied.

Rule to show cause why this execution should not be quashed. Curry recovered judgment against Lovell before B. More, a justice of the peace for Washington county, on the 26th of August, 1801. Lovell obtained a supersedeas under the act of assembly of Maryland, until the 26th of February, 1802, and in the mean time removed to Alexandria county. When the supersedeas had expired, the plaintiff obtained a new warrant from a justice of the peace in Alexandria county, and recovered judgment and took out execution there which was not satisfied, Lovell having removed back to this county. The plaintiff then took out the present execution on the supersedeas here. Rule discharged.

## Case No. 3,496a.
CURRY et al. v. McCAULEY et al.
District Court, W. D. Pennsylvania. Oct. Term, 1879.
[See 11 Fed. 365.]

CURRY (MUSSER v.). See Case No. 9,973.

## Case No. 3,497.
CURRY v. ROULSTONE et al.
[Brunner, Col. Cas. 121;[1] 2 Overt. 110.]
Circuit Court, D. Tennessee. June, 1809.

BILL OF LADING—EFFECT OF ASSIGNMENT OF.

The assignment of a bill of lading passes the property in the goods, and the consignor thereby loses the right of stoppage in transitu, and advances subsequently made by him on the transmission of the goods are not a lien on them.

In equity. The facts were that on the 6th of April, 1804, Alexander Roulstone, one of the defendants, shipped at New Orleans in the barge called Deborah, Lindsey Shannon master, a quantity of goods for account and risk of Col. Charles Lynch, of Shelby county, Kentucky, another of the defendants; to be delivered to the said Lynch or his assigns, he or they paying freight at the port of Louisville on the Ohio. On the same day, and of the above tenor, the master of the boat signed triplicate bills of lading, one of which was transmitted by Roulstone to Lynch, who assigned the same to Jorden, Banks, and Owens for a bona fide and valuable consideration, who procured the cargo to be insured in Lexington, Kentucky, on the 25th of May, 1804. The defendant, Roulstone, after having shipped the goods at Orleans, came on immediately to Nashville, and on the 2d of June, 1804, after stating himself to be the owner of the boat and cargo, em-

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]